## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No.  3:10-cv-50298 |
| | ) | |
| v. | ) | |
| | ) | Hon. Judge Frederick J. Kapala |
| FOXFIRE PRINTING AND PACKAGING, INC., STONECRAFTERS, INC., and AMERICANA ART CHINA CO., INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## CORRECTED FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, Hartford Casualty Insurance Company ("Hartford"), by and through its attorneys, Neil Lloyd and Marci A. Eisenstein of Schiff Hardin LLP, and for its First Amended Complaint against Defendants, Foxfire Printing and Packaging, Inc. ("Foxfire"), Stonecrafters, Inc. ("Stonecrafters"), and Americana Art China Co., Inc. ("Americana"), alleges as follows:

### Nature of the Action

1.     Plaintiff brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, et seq., and Rule 57 of the Federal Rules of Civil Procedure, seeking a declaration that the it has no duty to defend or indemnify Foxfire, pursuant to the insurance policies it issued to Foxfire, in connection with the class action lawsuit entitled *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.* (N.D. Ill. No. 1:08-cv-06992) (the "Underlying Lawsuit").

## Jurisdiction and Venue

2.      Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) because (1) there is complete diversity of citizenship between Plaintiff, Hartford, on the one hand, and Defendants, on the other hand; and (2) the amount in controversy, including the cost of defending and indemnifying Foxfire in the Underlying Lawsuit, well exceeds $75,000.

3.      This Court has personal jurisdiction over Americana because Americana has continuous, systematic, and substantial contacts with this district; Americana has purposefully availed itself of the privileges of conducting activities within this district; and Americana consented to or waived its right to contest personal jurisdiction in this action by becoming a plaintiff in an action in this Court based on the same transaction or nucleus of operative facts.

4.      Venue is appropriate pursuant to 28 U.S.C. § 1391(a)(1)-(3), (c) because (1) this Court has personal jurisdiction over Americana and Foxfire; (2) Stonecrafters is an Illinois corporation; and (3) a substantial part of the events or omissions giving rise to the Underlying Lawsuit occurred in the Northern District of Illinois.

## The Parties

5.      Plaintiff Hartford is a corporation organized under the laws of the State of Indiana with its principal place of business located in Connecticut.

6.      Defendant Foxfire is a Delaware corporation with its principal place of business in Delaware.

7.      Defendant Stonecrafters is an Illinois corporation with its principal place of business in Illinois.

8.      Defendant Americana is the representative of the proposed class and is an Ohio corporation with its principal place of business in Ohio.

## The Policies

9.      Hartford issued to Named Insured Foxfire Printing & Packaging, Inc. the following potentially applicable multiple coverage part insurance policies ("the Hartford Policies"):

- Policy No. 39 SBA UE 3895, for the policy period of June 8, 2007 to June 8, 2008 ("the 2007-2008 Hartford Policy").  A true and correct copy of which is attached as **Exhibit A**.

- Policy No. 39 SBA UE 3895, for the policy period of June 8, 2008 to June 8, 2009 ("the 2008-2009 Hartford Policy").  A true and correct copy of which is attached as **Exhibit B**.

10.      The Hartford Policies afford Business Liability Coverage subject to limits of $1 million per occurrence for "property damage" liability, $1 million "personal and advertising injury," and a $2 million general aggregate.  The Hartford Policies afford Business Liability Coverage pursuant to form SS 00 08 04 05.

11.      The Hartford Policies afford Umbrella Liability Coverage subject to Limits of Insurance, including $5 million for Each Occurrence and a $5 million General Aggregate.  The Hartford Policies afford Umbrella Liability Coverage pursuant to form SX 80 02 04 05.

12. The Hartford Policies provide Business Liability Coverage for "property damage" only if, among other requirements, the "property damage" is caused by an "occurrence," and the "property damage" occurs during the policy period.

13. The Hartford Policies provide Business Liability Coverage for "personal and advertising injury" only if, among other requirements, the "personal and advertising injury" is caused by an "offense" committed during the policy period.

14. The Business Liability Coverage form to each of the Hartford Policies contains the following pertinent definitions:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

> "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

> * * *

> e.    Oral, written or electronic publication of material that violates a person's right of privacy … .

> "Property damage" means:

> a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b.    Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

> As used in this definition, "electronic data" is not tangible property.

15.    Each of the Hartford Policies contains the following exclusion applicable to the Business Liability Coverage:

This insurance does not apply to:

**a.    Expected or Intended Injury**

**(1)**    … "property damage" expected or intended from the standpoint of the "insured". …

**(2)**    "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

16.    Each of the Hartford Policies excludes coverage for "personal and advertising injury":

Arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in absence of such state or federal act;

[*See, e.g.*, Exhibits A and B, Business Liability Coverage form, at Exclusion p. 2].

17.    Each of the Hartford Policies excludes coverage for "personal and advertising injury": "Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period." [*See, e.g.*, Exhibits A and B, Business Liability Coverage form, Exclusion p. 11].

18.    The Business Liability Coverage to the Hartford Policies also contains the following exclusion:

**t.    Violation Of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods Of Sending Material Or Information**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

19.    The Hartford Policies contain the following conditions:

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

* * *

**c.    Assistance And Cooperation Of The Insured**

You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

* * *

(3)    Cooperate with us in the investigation, settlement of the claim or defense against the "suit"; …

**d.**     **Obligations At The Insured's Own Cost**

> No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense … without our consent.

20.     The Hartford Policies afford certain Umbrella Liability Coverage for "damages" in excess of the "underlying insurance," or of the "self-insured retention" when no "underlying insurance" applies, because of "property damage" or "personal and advertising injury" caused by an "occurrence," but only if, among other requirements, the "property damage" or "personal and advertising injury" offense occurs during the "policy period." The Extension Schedule of Underlying Insurance Policies identifies the "Underlying Insurance" to the Umbrella Coverage, with such Underlying Insurance defined to include the Business Liability Coverage.

21.     Pursuant to an exclusion, the Umbrella Liability Coverage to the Hartford Policies does not apply to "personal and advertising injury," unless "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury." *See* Exhibits A-B, Umbrella Liability Coverage, Exclusion 4.

22.     The Umbrella Liability Coverage to the Hartford Policies contains the following exclusion:

**18.**     **Expected or Intended**

> … "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to … "property damage" resulting from the use of reasonable force to protect persons or property.

23.     The Umbrella Liability Coverage to the Hartford Policies also contains the

following exclusion:

**24.     Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information**

… "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.**     The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**b.**     The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.**     Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

24.     The Umbrella Liability Coverage to the Hartford Policies also contains the

following conditions:

**C.     Duties In The Event Of Occurrence, Claim or Suit**

**3.**     You and any other involved "insured" must:

**(a)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" involving or likely to involve a sum in excess of any "self-insured retention" or "underlying insurance", whichever applies;

\* \* \*

(c)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; …

\* \* \*

4.     No "insured" will, except at that "insured's" own cost, make or agree to any settlement for a sum in excess of:

(a)     The total limits of "underlying insurance"; or

(b)     The "self-insured retention" if no "underlying insurance" applies without our consent.

5.     No "insured" will, except at that "insured's" own cost, make a payment, assume any obligation, or incur any expenses … without our consent.

### The Underlying Lawsuit

25.     On or about November 7, 2008, Stonecrafters filed a putative Class Action Complaint (the "Underlying Complaint") against Foxfire in the Circuit Court of the 22nd Judicial Circuit, McHenry County, Illinois. The action was subsequently removed to the United States District Court for the Northern District of Illinois, No. 1:08-cv-06992 ("the Underlying Lawsuit"). A true and correct copy of the Underlying Complaint is attached hereto as **Exhibit C**.

26.     The Underlying Complaint alleges that, on or about October 9, 2008, Foxfire faxed an advertisement to Stonecrafters, which had neither invited nor given permission to Foxfire to send fax advertisements. The Underlying Complaint alleges that Foxfire transmitted the same and similar facsimile advertisements to Stonecrafters and more than 39 other recipients without the recipients' express permission or

invitation.  The Underlying Complaint alleges that these unsolicited transmissions were in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

27.     The Underlying Complaint generally alleges that:

a.      This "case challenges Defendant's practice of faxing unsolicited advertisements";

b.      The TCPA "prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission ('junk faxes' or 'unsolicited faxes').  The TCPA provides a private right of action and provides statutory damages of $500 per violation."

c.      "Unsolicited faxes damage their recipients.  A junk fax recipient loses the use of its fax machine, paper, and ink toner.  An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.  A junk fax interrupts the recipient's privacy.  Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message."

d.      Plaintiff Stonecrafters "brings this case as a class action asserting claims against Defendant under the TCPA, the common law of conversion, and the consumer protection statutes forbidding and compensating unfair business practices"; and

e.      Plaintiffs "seek an award of statutory damages for each violation of the TCPA."

28.     The Underlying Complaint initially contained three counts, each of which was premised on the claim that Foxfire was responsible for sending the unsolicited facsimile advertisements to Stonecrafters and the class, as follows:

- Count I: Telephone Consumer Protection Act;

- Count II: Conversion;

- Count III: Illinois Consumer Fraud and Deceptive Business Practices Act.

29. In Count I, the Underlying Complaint alleges Foxfire violated the TCPA by sending advertising faxes to Stonecrafters and other members of the class without first obtaining their "prior express invitation or permission." Count I seeks injunctive relief, $500.00 in statutory damages for each violation of the TCPA and costs, but not more than $75,000.00 per individual class member.

30. Count I was asserted on behalf of a class defined as "all persons who (1) on or after four years prior to the filing of this action; (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant; (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes; and (4) with whom Defendant does not have an established business relationship."

31. Counts II and III of the Complaint in the Underlying Lawsuit were dismissed by court order on July 8, 2009. A true and correct copy of the July 8, 2009 order is attached as **Exhibit D**.

32. In its initial motion for class certification on December 2, 2009, Stonecrafters amended its request for class certification from that described in the Underlying Complaint to the following (the "First Motion"):

> All persons who, at any time during the period July 15, 2008 through November 6, 2008, were sent a fax advertisement identifying "Foxfire," the telephone number 800-347-6273, and the website www.foxfiresigns.com or the fax number 302-533-2241.

A true and correct copy of the First Motion is attached as **Exhibit E**.

33.     This Court denied the First Motion on April 16, 2010, reasoning, in pertinent part, that the proposed class definition failed to exclude those fax numbers used by Foxfire prior to the alleged blast fax campaign and failed to exclude those persons or entities to whom Foxfire was unsuccessful in allegedly sending a fax.  A true and correct copy of the April 16, 2010 order is attached as **Exhibit F**.

34.     On May 14, 2010, Stonecrafters' proposed the following modified class definition (the "Second Motion"):

> All persons who received one or more faxes advertising "Foxfire Signs" during the period July 15, 2008 through November 6, 2008, but excluding any person who received such a fax prior to July 15, 2008.

A true and correct copy of the Second Motion is attached as **Exhibit G**.

35.     On December 23, 2010, this Honorable Court found that the class definition did not meet the commonality and typicality requirements under Rule 23 of the Federal Rules of Civil Procedure and held that the proposed definition improperly included those companies that had a previous business relationship with Foxfire prior to July 15, 2008.  A true and correct copy of the December 23, 2010 order is attached as **Exhibit H**.

36.     On April 4, 2011, Stonecrafters proposed the following further modified class definition (the "Third Motion"):

> All persons who received one more faxes in October 2008 offering sign kits containing 4 posters, 2 jumbo banners, 4 streamers, and 12 pennants for $35.96 per kit, stating that the regular price was $39.95 per kit, and instructing the recipients to place their orders at www.foxfiresigns.com,

but excluding any person who received any fax of any kind from Foxfire Printing prior to July 15, 2008.

A true and correct copy of the Third Motion is attached as **Exhibit I**.

37.     The Third Motion was fully briefed as of July 21, 2011 and remained pending as of October 19, 2011.

38.     On October 19, 2011, this Court allowed Americana Art China Co., Inc. ("Americana") to substitute in the Underlying Lawsuit for Stonecrafters as the class representative.  This Court also allowed for the voluntary dismissal of Stonecrafters, without prejudice, as a party plaintiff.  A true and correct copy of the October 19, 2011 order is attached as **Exhibit J**.

39.     Americana and Foxfire apparently had previously entered into a proposed settlement agreement.  On October 19, 2011, this Court, following a preliminary settlement hearing, found that the proposed settlement was "fair, just and reasonable." See Exhibit J.

40.     In the proposed settlement agreement, Americana and Foxfire stipulated to certification of the following settlement class:

> All persons to whom Foxfire or its agents, including but not limited to WestFax, Inc. and FAXTS, Inc., sent facsimiles advertising Foxfire's products or services during the period February 15, 2008 through November 6, 2008.

A true and correct copy of Plaintiff's motion for order preliminarily approving class action settlement is attached hereto as **Exhibit K**.

41.     Pursuant to the terms of the proposed settlement agreement, Foxfire will allow a judgment to be entered against it in the amount of $18 million, enforceable only

against the proceeds of Foxfire's insurance policies, including but not limited to the Hartford Policies. The judgment is characterized as nonrecourse, except with respect to Foxfire's insurance policies. Americana apparently intends to seek satisfaction of the judgment from, in part, Hartford. See Exhibit K.

42. Foxfire did not provide notice to Hartford of the proposed settlement or any demands or negotiations leading to the proposed settlement.

43. Hartford did not consent to the proposed settlement.

44. Hartford objects to the proposed settlement as unreasonable and collusive. In particular, the proposed settlement is procedurally and substantively improper, and the amount of the proposed settlement is highly unreasonable and bears no logical connection to the Foxfire's likely exposure in the Underlying Lawsuit.

### Hartford's Reservation of Rights

45. By letter dated December 3, 2008, Hartford advised Foxfire that Hartford may not owe an obligation to defend or indemnify Foxfire under the Hartford Policies in connection with the allegations contained in the Underlying Lawsuit and that Hartford would defend Foxfire in that suit pursuant to a full reservation of its rights under the policies and law. A true and correct copy of the December 3, 2008 letter is attached hereto as **Exhibit L**.

46. Hartford also advised Foxfire it had retained Alan Becker of the law firm, Litchfield Cavo LLP, who "ha[d] successfully handled a number of suits against Hartford policy holders seeking damages under the [TCPA] … including several brought by Stonecrafters [sic] attorney," to represent solely Foxfire's interests in the

Underlying Lawsuit. Further, Hartford informed Foxfire that Mr. Becker would not give guidance to either Foxfire or Hartford with respect to insurance coverage.

47.　Hartford recommended to Foxfire that it retain counsel to advise as to insurance coverage and "to assist you in evaluating both the prospects for and magnitude of Foxfire's uninsured exposure."

48.　Foxfire agreed to be defended by Litchfield Cavo. Litchfield Cavo then on Foxfire's behalf successfully dismissed two of the three counts of the Underlying Complaint and successfully opposed twice Plaintiff's motion for class certification.

49.　On March 31, 2011, Hartford offered Foxfire the option of selecting independent defense counsel of Foxfire's choice, whose reasonable and necessary fees would be paid by Hartford. A true and correct copy of the March 31, 2011 letter is attached hereto as **Exhibit M**.

50.　On August 31, 2011, personal counsel for Foxfire requested that Eugene Schlitz of The Coleman Law Firm be substituted for Litchfield Cavo as defense counsel for Foxfire in the Underlying Lawsuit. A true and correct copy of the August 31, 2011 letter is attached hereto as **Exhibit N**.

51.　On September 26, 2011, Mr. Schlitz entered an appearance for Foxfire in the Underlying Lawsuit. At this point, no class had been certified in the Underlying Lawsuit.

**Count I**
**(Declaratory Judgment)**
**(No Property Damage Liability Coverage For The Judgment in the Underlying**
**Lawsuit)**

52.     Hartford reincorporates by reference paragraphs 1 through 50 above, as though fully restated herein, as paragraph 51.

53.     As set forth in part above, subject to various terms, provisions, and exclusions, as well as various conditions and limits, the Hartford Policies provide certain Business Liability and Umbrella Liability Coverage for "property damage" only if, among other requirements, the "property damage" is caused by an "occurrence," and the "property damage" occurs during the policy period.

54.     The Underlying Lawsuit does not allege "property damage" caused by an "occurrence" because it does not allege the requisite "accident."  Foxfire is alleged to have transmitted facsimile advertisements to the proposed class of recipients without having first requested and obtained their express permission or invitation.  Because sending a facsimile is a willful, volitional, intentional act, the conduct which forms the basis for the Underlying Lawsuit is not an accident and cannot result in a covered "occurrence" under any of the Hartford Policies.

55.     Even assuming the Underlying Lawsuit somehow is deemed to seek damages for an "occurrence," the Underlying Complaint does not contain factual allegations of covered "property damage", as those terms are defined in the Hartford Policies.  Thus, recovery is not sought in the Underlying Lawsuit for damages because of "property damage."

56.     As alleged in the Underlying Complaint, because sending a fax advertisement is a volitional, willful and intentional act, the result of which also is intended or expected, the alleged conduct which forms the basis for the damages alleged in the Underlying Lawsuit falls within the Hartford Policies' exclusion for expected or intended injury.

57.     No coverage could be owed for the Underlying Lawsuit under the Hartford Policies, which incorporate a TCPA Exclusion that excludes coverage for:

> **Violation Of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods Of Sending Material Or Information**
>
> … "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
>
> **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
>
> **(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

58.     Accordingly, the Hartford Policies do not provide coverage for the allegations in the Underlying Lawsuit.  As a result, Hartford has no duty to defend or indemnify Foxfire for "property damage" in connection with the Underlying Lawsuit under the Hartford Policies.

59.     By reason of the foregoing, there exists an actual and justiciable controversy among the parties concerning their respective rights and duties and

obligations under and pursuant to the Hartford Policies. Hartford contends there is no obligation to defend or indemnify Foxfire in connection with the claims asserted in the Underlying Lawsuit based on the terms of the Hartford Policies and applicable law. Foxfire and Americana contend duties to defend and indemnify exist under the Hartford Policies for the claims asserted against Foxfire in the Underlying Lawsuit.

60. Hartford has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Hartford Policies. A judicial declaration is necessary and appropriate at this time so that Hartford may ascertain its rights and duties with respect to defense and indemnity under the Hartford Policies for the Underlying Lawsuit.

61. This Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to the issues raised by this Complaint and to declare that Hartford has no duty to defend or indemnify Foxfire with respect to the Underlying Lawsuit.

**WHEREFORE**, Plaintiff Hartford Casualty Insurance Company respectfully requests entry of judgment on Count I of its Complaint as follows:

(a)     For a declaration that, based on the terms of the Hartford Policies and applicable law, Hartford has no duty to defend Foxfire with respect to the Underlying Lawsuit; and

(b)     For a declaration that, based on the terms of the Hartford Policies and applicable law, Hartford has no duty to indemnify Foxfire with respect to the Underlying Lawsuit; and

(c)      For any further relief which this Court deems to be just and proper.

**Count II**
**(Declaratory Judgment)**
**(No Personal and Advertising Injury Liability Coverage For The Underlying Lawsuit)**

62.      Hartford reincorporates by reference paragraphs 1 through 50 above, as though fully restated herein, as paragraph 61.

63.      As set forth in part above, subject to various terms, provisions, and exclusions, as well as various conditions and limits, the Hartford Policies provide certain Business Liability and Umbrella Liability Coverage for "personal and advertising injury" only if, among other requirements, the "personal and advertising injury" is caused by an offense committed during the policy period.

64.      The Hartford Policies only afford Umbrella Liability Coverage for "personal and advertising injury" if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury."

65.      The Underlying Lawsuit, which seeks to recover statutory damages afforded by the TCPA, and the ordinary expected expense of lost paper, toner and employee time incurred in the receipt of faxes, does not allege or seek to recover for any "personal and advertising injury" caused by an offense, as those terms are used in the Hartford Policies.

66.      The Hartford Policies define "personal and advertising injury" to include "Oral, written or electronic publication of material that violates a person's right of privacy."  Violations of the TCPA, in the form of unsolicited fax advertisements for

Foxfire's printing business, do not satisfy this or any other definition of "personal and advertising injury." The alleged unsolicited fax advertisements for Foxfire's printing business do not involve a *publication of material* that violates a *person's* right of privacy.

67. Even if unsolicited fax advertisements for Foxfire's printing business could be construed as involving a *publication of material* that violates a *person's* right of privacy, violations of the TCPA would not qualify for coverage, as the Hartford Policies exclude "personal and advertising injury:"

> Arising out of the violation of a person's right of privacy created by any state or federal act.

> However, this exclusion does not apply to liability for damages that the insured would have in absence of such state or federal act;

68. As alleged in the Underlying Lawsuit, Foxfire sent an unsolicited fax advertisement. Sending a fax advertisement is a volitional, willful and intentional act, the result of which also is intended or expected. Accordingly, even if "personal and advertising injury" were at issue, the conduct which forms the basis for the damages alleged in the Underlying Complaint thus falls within the scope of the exclusion for "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

69. No coverage could be owed for the Underlying Lawsuit under the Hartford Policies, which incorporate a TCPA Exclusion that excludes coverage for:

**Violation Of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods Of Sending Material Or Information**

… "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

70. Accordingly, Hartford has no duty to defend or to indemnify Foxfire under the Business Liability or Umbrella Liability Coverage of the Hartford Policies for "personal and advertising injury" in connection with the Underlying Lawsuit.

71. By reason of the foregoing, there exists an actual and justiciable controversy among the parties concerning their respective rights and duties and obligations under the Hartford Policies. Hartford contends there is no coverage for the claims asserted against Foxfire in the Underlying Lawsuit based on the terms of the Policies and applicable law. Foxfire and Americana contend coverage exists under the Hartford Policies for the claims asserted against Foxfire in the Underlying Lawsuit.

72. Hartford has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Hartford Policies. A judicial declaration is necessary and appropriate at this time so that Hartford may

ascertain its rights and duties with respect to defense and indemnity under the Hartford Policies for the Underlying Lawsuit.

73.     This Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint and to declare Hartford has no duty to defend Foxfire with respect to the Underlying Lawsuit and that the allegations of the Underlying Lawsuit are not covered by the Hartford Policies.

**WHEREFORE**, Plaintiff, Hartford Casualty Insurance Company, respectfully requests entry of judgment on Count II of its Complaint as follows:

(a)     For a declaration that, based on the terms of the Hartford Policies and applicable law, Hartford has no duty to defend Foxfire with respect to the Underlying Lawsuit; and

(b)     For a declaration that, based on the terms of the Hartford Policies and applicable law, Hartford has no duty to indemnify Foxfire with respect to the Underlying Lawsuit; and

(c)     For any further relief which this Court deems to be just and proper.

### Count III
### (Declaratory Judgment)
### (Breach of the Cooperation and Voluntary Payments Provisions)

74.     Hartford reincorporates by reference paragraphs 1 through 50 above, as though fully restated herein, as paragraph 73.

75.     As set forth in part above, subject to various terms, provisions, and exclusions, as well as various conditions and limits, the Hartford Policies require as

conditions precedent to coverage under the Business Liability and Umbrella Liability Coverage that an insured immediately send Hartford copies of demands and legal papers in connection with a lawsuit, cooperate with Hartford in settlement a lawsuit, and refrain from agreeing to any settlement without Hartford's consent.

76. Foxfire entered into without Hartford's consent a settlement with respect to the Underlying Lawsuit.

77. As a result, Foxfire breached the voluntary payments provision of the Hartford Policies, and in turn, this eliminates any obligation Hartford arguably may have had to defend or indemnify Foxfire in connection with the Underlying Lawsuit.

78. Foxfire failed to provide Hartford notice of the settlement or the negotiations or demands leading to the settlement.

79. As a result, Foxfire breached the cooperation clause of the Hartford Policies, and in turn, this eliminates any obligation Hartford arguably may have had to defend or indemnify Foxfire in connection with the Underlying Lawsuit.

80. By reason of the foregoing, there exists an actual and justiciable controversy among the parties concerning their respective rights and duties and obligations under the Hartford Policies. Hartford contends there is no coverage for the claims asserted against Foxfire in the Underlying Lawsuit based on the terms of the Policies and applicable law. Foxfire and Americana contend coverage exists under the Hartford Policies for the claims asserted against Foxfire in the Underlying Lawsuit.

81. Hartford has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Hartford Policies. A

judicial declaration is necessary and appropriate at this time so that Hartford may ascertain its rights and duties with respect to defense and indemnity under the Hartford Policies for the Underlying Lawsuit.

82.     This Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint and to declare Hartford has no duty to defend Foxfire with respect to the Underlying Lawsuit and that the allegations of the Underlying Lawsuit are not covered by the Hartford Policies.

**WHEREFORE**, Plaintiff, Hartford Casualty Insurance Company, respectfully requests entry of judgment on Count III of its Complaint as follows:

(a)     For a declaration that, based on the terms of the Hartford Policies and applicable law, Hartford has no duty to defend Foxfire with respect to the Underlying Lawsuit; and

(b)     For a declaration that, based on the terms of the Hartford Policies and applicable law, Hartford has no duty to indemnify Foxfire with respect to the Underlying Lawsuit; and

(c)     For any further relief which this Court deems to be just and proper.

Respectfully submitted,

Hartford Casualty Insurance Company


By:_____/s/ Neil Lloyd_____
          One of Its Attorneys

Neil Lloyd (ARDC #: 6225481)
Marci A. Eisenstein (ARDC #: 03125042)
Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
Phone: 312.258.5628/Fax: 312.258.5600